Wendt & Crone Company, Appellant, v. John Traff, Appellee.

Gen. No. 34,655.

Opinion filed May 19, 1931.

George C. Bliss, for appellant.

John A. Bloomingston, for appellee.

Mr. Justice Gridley delivered the opinion of the court.

In an action commenced on July 21, 1928, based upon section 29 (1st clause) of the Illinois Workmen's Compensation Act (Cahill's St. 1927, ch. 48, ¶ 229, p. 1236), there was a trial before a jury on April 24, 1930, and at the close of plaintiff's evidence the court, on defendant's motion, directed the jury to find defendant not guilty. Such verdict was returned and a judgment against plaintiff for costs entered. The action was originally brought against John Traff and John A. Lundstrom as defendants, but during the trial, on plaintiff's motion, Lundstrom was dismissed from the case. Plaintiff has appealed from the judgment against it and here urges that the court erred in entering the judgment on a directed verdict.

The statute referred to is as follows:

"Where an injury or death for which compensation is payable by the employer under this Act, *was not proximately caused by the negligence of the employer or his employees,* and was caused under circumstances creating a legal liability for damages in some person other than the employer to pay damages, such other person having also elected to be bound by this Act, or being bound thereby under section three (3) of this Act, then the right of the employee or personal representative to recover against such other person shall be subrogated to his employer and such employer may bring legal proceedings against such other person to recover the damages sustained in an amount not exceeding the aggregate amount of compensation payable under this Act, by reason of the injury or death of such employee."

In plaintiff's declaration, consisting of one count, it is alleged in substance that on August 3, 1927, defendants were engaged in a business or enterprise in Cook county, Illinois, and were operating under and subject to the provisions of the Compensation Act, and, by virtue of section 3 of the Act, Cahill's St. ch. 48, ¶ 202, were automatically under the provisions thereof, —being engaged in the erection of a structure or building and having elected prior thereto to provide and pay compensation to their employees and having filed notice of such election with the Illinois industrial commission; that plaintiff, on said date and prior thereto, also was engaged in the same business or enterprise subject to the provisions of the Act, had made a similar election and had filed a similar notice of its election, and was automatically under the provisions of the Act,—being engaged in the erection of the structure or building; that on said day defendants owned, operated and controlled a certain hoist erected alongside of a building under course of construction, located at 2734-38 Pine Grove avenue, Chicago; that the hoist was used for the conveying of cement and other material used in the construction of the building; that plaintiff was a contractor and had contracted to furnish certain work in connection with the construction of the building; that one Charles Schroeder then and there was working for it, as its employee; that in connection with its work certain material would be taken to the various floors of the building on the hoist; that it was necessary for Schroeder in the course of his employment, when the hoist had been elevated, opposite to certain floors of the building, to go out upon the platform thereof for the purpose of removing into the building certain of plaintiff's material; that it then and there became defendants' duty to use reasonable care for the safety of Schroeder; that they failed in their duty and so negligently operated, controlled and

maintained the hoist that, while he was on said platform, opposite to the 11th floor, the cables, clamps and appliances, used in connection with the operation of the hoist, suddenly broke, became loose or gave way, whereby the platform (upon which he was) fell and he received injuries resulting in his death; that both before and at the time of the accident he was using due care for his own safety; that his injuries and death "were not proximately caused by the negligence of plaintiff or its employees"; that he received the injuries resulting in his death in an accident arising out of and in the course of his employment by plaintiff; that he left him surviving his wife, Ella Schroeder, and one minor child, whom he was under legal obligation to support; that as a result of his death, and by virtue of the provisions of said Compensation Act, plaintiff became liable to pay, has entered into an agreement to pay, and has paid the sum of $4,200 to Ella Schroeder in the manner provided for in said Compensation Act; that an order has been entered by the industrial commission of Illinois on plaintiff to make said payments as aforesaid for the benefit of Ella Schroeder and said minor child; and that, by virtue of section 29 of said Compensation Act, Cahill's St. ch. 48, ¶ 229, defendants are liable and indebted to plaintiff in said sum of $4,200, which they have refused to pay. To plaintiff's damage, etc.

On the trial plaintiff called six witnesses who testified as to details of the accident, and four other witnesses. Certain photographs, documents and other writings also were introduced.

Plaintiff's evidence disclosed the following facts in substance: Prior to and at the time of the accident Traff was a contractor doing the concrete and mason work on the building, known as the Lincoln Park Arms Hotel. He had various bricklayers, laborers, carpenters, etc., engaged in the work. Other contractors

were engaged in other work on the building, among them plaintiff, which by employees was installing a ventilating system for the building. Traff had erected a hoist or tower in front of the building which, when not in use by him, he rented to the other contractors, at $5 per hour or 50 cents "a lift," for the purpose of conveying their material to different floors of the building. In May, 1927, Traff made arrangements to borrow from John A. Lundstrom, also in the general contracting business, what is described by the witnesses as a hoist, tower or steel mast. Besides the tower and mast there was a platform, but Lundstrom did not furnish any cables, machinery, electrical devices, etc., to operate the hoist, which was thereafter erected in front of the building by Traff's employees and operated solely by them. Its operation was controlled by electrical devices, etc., in a shanty in front of the building near the bottom of the hoist. These devices, etc., were controlled and operated at the time of the accident by one Shumacher, Traff's employee, and known as his hoisting engineer. The hoist had been in operation since May, 1927. One Wenckert, superintendent for Traff, testified that no one, besides himself and the hoisting engineer, had anything to do with the control or operation of the hoist. On the morning of the accident plaintiff's foreman, Weiss, desiring to elevate certain pipe for use in its work on the building, made arrangements with Traff to use the hoist and to pay him therefor 50 cents a lift. Some of plaintiff's employees, when the platform thereof was at the bottom, placed thereon two joints of pipe, about 8 feet long and weighing about 140 pounds. Signal was given to Shumacher to elevate the hoist platform to the 10th floor of the building, and this was done. When the platform had reached that floor two employees of plaintiff, Charles Schroeder and Edward Miller, who had walked up through the building, got

upon the platform and removed one of the pipes into the building. Signal then was given to Shumacher to elevate the platform to the 11th floor and this was done. Schroeder and Miller, who had walked up to that floor, got upon the platform for the purpose of removing the remaining joint of pipe into the building. As they were in the act of lifting the pipe, and while both were on the platform, it suddenly fell to the ground and with it the two men and joint of pipe. Schroeder received injuries which caused his death on the following day. Miller, although injured, had sufficiently recovered at the time of the trial to testify as plaintiff's witness. He and other of its witnesses testified that neither he nor any of its employees had anything to do at or prior to the time of the accident with the operation or control of the hoist, except to give the signals for its movements as mentioned.

Ella Schroeder testified that she is the widow of the deceased, who also left him surviving a daughter, 13 years of age; that she had entered into a settlement contract with plaintiff; and that up to the time of the trial she had received compensation payments, aggregating $2,155. The settlement contract, approved by the Illinois industrial commission, was also introduced in evidence. It states in substance that the deceased was killed as the result of an accident that arose out of and in the course of his employment with plaintiff; that he was the parent of a child under the age of 16 years; and that under the terms of the settlement contract the applicant was to receive the sum of $4,200, at the rate of $15 per week.

Plaintiff's evidence further disclosed that shortly before the accident, on the same morning, two other joints of pipe by similar actions had successfully been hoisted and put into the building for plaintiff; that two joints of pipe and two men on the platform were not considered a heavy load; and that heavier loads on

previous days had been elevated and deposited on various floors of the building. Three photographs, showing the condition of the hoist, etc., immediately after the accident, were introduced in evidence by plaintiff. From these photographs and from the testimony of witnesses it appeared that certain ''U'' bolts, holding the end of the cable which passed through a so-called ''shiv'' above the hoist platform, had come loose, causing the cable, which did not break, to slip through the ''shiv'' and resulting in the fall of the hoist, etc., to the ground. Another photograph, presented by defendant and introduced in evidence by agreement, showed the hoist *as repaired after the accident,* disclosing four ''clips'' or ''U'' bolts, with a loop in the cable after it comes through the ''shiv'' whereas before the accident there was no loop and only three ''U'' bolts clamping the cable.

Shumacher, who had control of the hoist, machinery, electrical devices, appliances, etc., and their operation, just before and at the time of the accident, testified in substance that he had what is known as a two-drum machine but was using only one drum; that after he got his orders to stop the hoist at the particular floor he did not notice that anything unusual occurred *except* that the cable ''may have doubled up on the drum and gave her some kind of a jerk . . . and the hoist platform fell''; that after the accident he found that the cable had pulled out of the clips, and ''was raveled on the ends''; that he had greased or oiled all moving parts of the hoist in the morning, shortly before the accident; that when he did the oiling ''these clips were a few inches in front of me and they appeared all right''; that before the accident there were three clips or ''U'' bolts holding the cable; that in his opinion the fact that the cable doubled up on the drum and jerked was ''the reason for the clips pulling out''; that part of his duties was to see that ''things are in working

order''; that he could not say how long the ''clips had been on there,'' that he ''did not tighten them that morning,'' and that ''if the clips or nuts loosen up, the cable is apt to slip through''; and that there was no protection if the bolts became loose, ''except one safety catch in there, which is pretty hard to get at.''

The bill of exceptions also disclosed that, during the argument in chambers on defendant's motion for a directed verdict, the trial court stated in substance that in his opinion, under the evidence, the accident was in part brought about by the negligent failure of Shumacher, defendant's engineer, to properly inspect the hoist, its machinery, appliances, etc., on the morning of and prior to the accident; that the duty of such inspection rested upon defendant but that plaintiff, by its employees, had the *equal* duty to make such inspection; and that, as it does not appear that it made such inspection, plaintiff should not be allowed to recover as a matter of law, because plaintiff's employees, Schroeder and Miller, were themselves guilty of negligence, which contributed to the accident, in failing to make such inspection.

In view of the language of the statute, we cannot agree with this reasoning, and are of the opinion, under all the facts and circumstances in evidence, that the court erred in directing a verdict in defendant's favor. The statute (section 29) upon which the action is based, reads in part that ''where an injury or death, for which compensation is payable by the employer (plaintiff) under this Act, was not proximately caused by the negligence of the employer or his employees, and was caused under circumstances creating a liability in some person (defendant) other than the employer to pay damages,'' etc. We think that the questions whether Schroeder's death was proximately caused by the negligence of plaintiff or its employees, or whether it was proximately caused by the negli-

gence of defendant or his employees, or whether plaintiff or its employees were guilty of any negligence which contributed to said accident and death, were all questions for the jury, and not for the trial court, to determine. In *O'Brien v. Chicago City Ry. Co.*, 305 Ill. 244, it is held in substance that under said section 29, where the injury is caused by the negligence of a third party who is bound by the provisions of the Act, the employee has no right of action against the third party, but such right is transferred to the employer, who has paid the compensation fixed by the Act. In the present case it appears that all parties were bound by the provisions of the act and that the employer (plaintiff) has paid or is paying weekly the compensation as fixed by the act and awarded by the commission. In the *O'Brien* case, at page 253, it is said: ''Where the negligent party was subject to the provisions of the act, section 29 provided that the measure of his liability should be the damages sustained, not, however, exceeding the compensation payable under the act, and the employer of the injured employee should be subrogated to his employee's right against the party causing the injury.''

The judgment appealed from is reversed and the cause remanded.

*Reversed and remanded.*

SCANLAN, P. J., and KERNER, J., concur.